Entered on Docket
April 17, 2007
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

FILED
APR 1 3 2007
CLERK
United States Bankruptcy Court
San Jose, California

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>David Dennis Webster,<br><br>    Debtor. | Case No. 05-56449-ASW<br><br>Chapter 7 |
| Eric G. Shedlarski,<br><br>    Plaintiff,<br>vs.<br><br>David Dennis Webster,<br><br>    Defendant. | Adversary No. 05-5627 |

MEMORANDUM DECISION
DETERMINING DEBT TO BE DISCHARGEABLE

Before the Court is a complaint by Eric G. Shedlarski ("Creditor") against David Dennis Webster, the Debtor in this Chapter 7 case ("Debtor"). The complaint seeks a determination of non-dischargeability for a stipulated judgment of $8,039.27 plus interest and costs based upon 11 U.S.C. §523(a)(2).[1]

The matter has been tried and submitted for decision. Debtor is represented by Henry B. Niles III, Esq. Creditor is pro se. At

---

[1] Unless otherwise noted, all statutory references are to Title 11, United States Code, as amended in 2005 ("Bankruptcy Code").

trial, Creditor called himself as witness. Debtor called himself as witness.

This Memorandum Decision constitutes the Court's findings of fact and conclusions of law, pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

I.

FACTS

Debtor works in the computer industry in business development. Debtor is not an attorney. Debtor leased residential property located at 16040 Redwood Lodge Road, Los Gatos, California 95033 (the "Property") to Creditor pursuant to a written lease agreement dated January 24, 2004. Debtor and his ex-wife formerly utilized the Property as their residence. Under the lease agreement, Creditor paid Debtor a security deposit of $7,000.

Creditor vacated the Property on February 8, 2005. Debtor and Creditor agreed that certain items would be deducted from the security deposit, leaving $4,790 of the security deposit owed to Creditor. Debtor failed to return the $4,790 to Creditor. Creditor tried to work with Debtor to obtain the return of the security deposit to no avail. Creditor hired counsel and, on March 24, 2005, Creditor sued Debtor in state court for the return of the $4,790 deposit, $9,580 in penalty damages, plus attorneys fees and costs of suit.

In early 2005, Debtor knew he was in financial trouble. Debtor had not paid the mortgage on the Property since November 2004. Debtor put the Property on the market in January or February 2005. On May 12, 2005, a Notice of Default was recorded against

the Property on behalf of Debtor's mortgage lender. On August 24, 2005, a Notice of Trustee's Sale ("Notice") was recorded against the Property. The Notice set a trustee's sale for September 13, 2005. Debtor attempted to find a buyer for the Property prior to the trustee's sale. Debtor testified that he believed, on the basis of his correspondence with real estate professionals, that there was $150,000 of equity in the Property in August 2005. Debtor's realtor held an open house on the Property on August 28, 2005.

Debtor represented himself in the state court litigation with Creditor. A trial was set on or about September 7, 2005. In early August 2005, Debtor testified that Creditor called Debtor when Debtor was in Canada visiting relatives. Debtor testified that he was unable to talk with Creditor at that time and Debtor established another time to call Creditor.

Debtor testified that he returned Creditor's call the next day and had a fifteen-minute telephone conversation. Debtor testified that, during that conversation, Debtor told Creditor that the Property was in foreclosure and that Debtor was contemplating bankruptcy, but that Debtor anticipated that the Property would sell before bankruptcy at a price great enough to pay Creditor's debt. Debtor testified that he also told Creditor that Debtor's marital difficulties were complicating the sale of the Property. Debtor distinctly recalled offering Creditor a lien on the Property in that phone conversation since Debtor believed there was sufficient equity in the Property to pay such a lien. Debtor did not recall if Debtor or Creditor initiated the idea of a lien.

Creditor acknowledged that Debtor communicated with Creditor and Creditor's state court counsel regarding the state court action. Creditor testified that he recalled one personal telephone call with Debtor in August 2005 that lasted about five minutes. Creditor testified that Creditor was aware of Debtor's financial distress during the relevant time period and knew that the Property was for sale. Creditor was also aware that Debtor and his wife were separated. Creditor maintained that he was unaware that the Property was in foreclosure.

On the eve of the state court trial, Creditor's counsel confirmed with Debtor that Debtor had agreed to a lien on the Property, and Creditor and Debtor entered into a stipulated judgment in the state court action. Pursuant to the stipulated judgment filed on September 7, 2005, Creditor agreed to reduce his claim from approximately $14,500.00 to $8,039.27 and to forebear from further collection actions. The parties also agreed that the stipulated judgment would operate as a lien on the Property.

Creditor testified that Debtor failed to mention the pending foreclosure proceedings during the settlement negotiations. Creditor asserted that he would not have entered into the stipulated judgment if he had known of the pending foreclosure proceedings. Creditor testified that he did not believe that either a judgment or a judgment lien guaranteed payment of what Debtor owed Creditor.

Debtor testified that during this period, Debtor was under the mistaken belief of fact and law that, if he provided Creditor with a judgment lien against the Property, that lien would survive a non-judicial foreclosure sale under California law. Debtor

believed in August and September 2005 that at a foreclosure sale, the Property would be subject to auction and would sell at the highest price and all liens on the Property would be paid in order of preference, i.e., that Creditor's junior lien would be paid as part of the foreclosure.

The trustee's sale took place on September 13, 2005, and the Property reverted to the lender. Debtor filed for bankruptcy on September 29, 2005. Creditor testified that he did not learn of the foreclosure sale until November 15, 2005. Creditor filed this action on December 27, 2005.

Debtor asserts there was no factual basis for Creditor's non-dischargeability complaint and seeks an award of fees and costs under 11 U.S.C. §523(d).

## II.

### APPLICABLE LAW

A debt arising from actual fraud "other than a statement respecting the debtor's or an insider's financial condition" is excepted from a Chapter 7 discharge pursuant to §523(a)(2)(A). The elements of a claim under this statute are:

(1) a representation, fraudulent omission or deceptive conduct by the debtor;

(2) knowledge of the falsity or deceptiveness of his statement or conduct;

(3) an intent to deceive;

(4) justifiable reliance by the creditor on the debtor's statement or conduct;

(5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

In re Harmon, 250 F.3d 1240, 1246 (9th Cir. 2001).

"A debtor's failure to disclose material facts constitutes a fraudulent omission under §523(a)(2)(A) if the debtor was under a duty to disclose and the debtor's omission was motivated by an intent to deceive." Harmon, 250 F.3d at 1246 n.4.

Absent a duty to disclose, the intent that must be shown for a determination of nondischargeability under §523(a)(2)(A) is actual intent, not merely intent implied in law, or constructive intent, Id. at 1249 n.10.

"Regardless of whether one is under a duty to speak or disclose facts, one who does speak must speak the whole truth, and not by partial suppression or concealment make the utterance untruthful and misleading." American Trust Co. v. California Western States Life Ins. Co., 15 Cal. 2d 42, 65 (1940).

The fact that a party had "constructive notice of the truth from public records is no defense to fraud." Bishop Creek Lodge v. Scira, 46 Cal. App. 4th 1721, 1734 (1996). The existence of such records "may be relevant to whether the victim's reliance was justifiable, but it is not, by itself, conclusive." Id.

The Bankruptcy Code is "designed to afford debtors a fresh start, and we interpret liberally its provisions favoring debtors." In re Bugna, 33 F.3d 1054, 1059 (9th Cir. 1994). The Code's limited exceptions to the general policy of discharge are to be construed narrowly. In re Riso, 978 F.2d 1151, 1154 (9th Cir. 1992).

The plaintiff in an action for determination of dischargeability under §523(a) bears the burden of proving all elements of the claim(s) for relief asserted by a preponderance of the evidence. <u>Grogan v. Garner</u>, 498 U.S. 279, 287 (1991).

III.

ANALYSIS

**1. Dischargeability Under Section 523(a)(2)**

Here, Creditor has not met his burden of proof that Debtor knowingly made a fraudulent omission with the intent to deceive Creditor during settlement negotiations related to the state court action. Despite Creditor's allegations, the evidence does not support a finding that Debtor knew or should have known that the judgment lien would not survive foreclosure or that the Debtor misrepresented the utility of that lien as consideration for settlement.

The alleged fraudulent omission by Debtor is Debtor's failure to inform Creditor of the foreclosure proceedings pending against the Property at the time of the settlement negotiations. Under the terms of the settlement, Debtor conveyed a judgment lien against the Property to Creditor. Creditor testified that he was not aware that foreclosure proceedings were underway against the Property at the time of the settlement negotiations. On the other hand, Debtor testified that he informed Creditor of the pending foreclosure by phone while Debtor was in Canada visiting his family.

Debtor testified that he was certain he had informed Creditor of the pending foreclosure because Debtor had written several notes to himself as to what Debtor planned to say to Creditor when Debtor

returned Creditor's call. Debtor emphasized that he included the foreclosure in his notes and reiterated that he described his financial trouble, his plans to sell the Property, his marital problems, and the pending foreclosure during the fifteen minute conversation with Creditor.

Creditor testified that he recalled having a phone conversation with Debtor in August 2005 and also testified that he knew the Property was for sale, that Debtor was experiencing marital problems, and that Debtor was in financial trouble. Creditor testified that he did not know about the pending foreclosure. Creditor indicated that Creditor's counsel, who represented Creditor in the state court action, may have received such a call from Debtor about the pending foreclosure. Creditor's counsel did not testify and Creditor did not present any other evidence to rebut Debtor's testimony that Debtor informed Creditor of the foreclosure.

Debtor and Creditor presented equally credible testimony. The Court believes that Creditor is sure that Debtor did not tell him of the pending foreclosure. It is possible that Debtor thought he told Creditor of the foreclosure but did not, e.g., because Debtor was sure Creditor would get paid on his lien even in a foreclosure. It also is very possible that Debtor informed Creditor's counsel, but not Creditor, of the pending foreclosure. That is perhaps the most likely scenario of what occurred. Either way, Debtor's conduct does not constitute fraud.

The parties agreed to settle their state court dispute on terms that included a judgment lien against the Property in the amount of $8,039.27. A judgment lien is of speculative value and

the lien's worth turned on the ultimate exchange price of the Property. The Property did not fetch a high enough price to pay all claims against it, and Creditor received no compensation post-sale. Had the Property sold on different terms, however, Creditor's lien might well have entitled him to payment.

Creditor asserts that Debtor was aware at the time of the settlement negotiations that the judgment lien would not survive the pending foreclosure sale and Debtor therefore knew that Debtor's failure to mention the foreclosure was deceptive. Debtor credibly testified that he had no such knowledge.

Debtor testified that he in fact anticipated that the Property would sell at a high enough price that the Creditor's junior lien would have been paid. Debtor testified that the Property had a mortgage of $800,000 and that he believed the Property would sell for $1,060,000. Debtor further testified that the experienced real estate professionals with whom Debtor dealt failed to anticipate the low sale price at which the Property ultimately transferred. To corroborate Debtor's testimony, Debtor admitted documents indicating that the Property had a listing price of $1,060,000 when Debtor and Creditor entered settlement negotiations. Debtor also testified that he was under the mistaken belief of fact and law that, if the Property underwent a foreclosure sale, an auction would take place and all liens would be paid.

Creditor presented no evidence to rebut Debtor's credible testimony other than his own equally credible testimony. Creditor did not prove by a preponderance of the evidence that Debtor knew or should have known of the judgment lien's worthlessness. Accordingly, it cannot be found that Debtor knew that a failure to

mention the foreclosure would be deceptive. Whether or not Debtor informed Creditor or Creditor's counsel of the pending foreclosure, Debtor's conduct did not constitute fraud because Debtor lacked the requisite intent. <u>Harmon</u>, 250 F.3d at 1249 n.10.

Creditor did not prove by a preponderance of the evidence that Debtor intended to or acted with the purpose of deceiving Creditor. Creditor did not introduce any evidence to suggest that he was justified in his reliance on Debtor's representations. The Court notes in this regard that Creditor does not allege that Debtor represented that the Property was <u>not</u> in foreclosure. Debtor argues that Creditor was represented by counsel in the state court action and that it was the responsibility of Creditor's counsel to investigate the status of the Property. The Notice was a matter of public record and Creditor's failure to investigate the status of the Property by himself or by his counsel may not constitute justifiable reliance. <u>Bishop Creek</u>, 46 Cal. App. 4th at 1734.

As for damages, Debtor argues that if Creditor had gone to trial rather than accept the stipulated judgment lien, Creditor would have, at best, received a judgment lien like the one offered by Debtor during the settlement negotiations and that such a lien also would not have survived the foreclosure sale. On this basis, Debtor argues that the alleged fraud left Creditor in the same position among other creditors that he would have held had Creditor proceeded with his state court claim.

Debtor's argument assumes Creditor was faced with only two options -- pursue the state court action and, if successful, recover a judgment lien, or agree to a stipulated judgment and accept a lien as settlement. Creditor testified that, had he known

MEMORANDUM DECISION DETERMINING
DEBT TO BE DISCHARGEABLE                10

Case: 05-05627   Doc# 23   Filed: 04/13/07   Entered: 04/17/07 16:37:22   Page 10 of 15

of the foreclosure, Creditor might have sought alternative consideration during the settlement negotiations. Creditor's testimony was vague and speculative and Creditor failed to substantiate his argument that he would have acted differently if he had knowledge of the pending foreclosure sale. Creditor did not prove by a preponderance of the evidence that he suffered damage as a result of Debtor's alleged fraud.

**2. Costs and Attorney's Fees Under Section 523(d)**

Debtor seeks recovery of his attorney's fees and costs incurred during the course of this adversary proceeding under 11 U.S.C. §523(d). Bankruptcy Code Section 523(d) provides:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

A consumer debt is defined in Bankruptcy Code Section 101(8) as "debt incurred by an individual primarily for a personal, family, or household purpose."

Once a debtor establishes that the obligation is a dischargeable consumer debt, the burden shifts to the creditor to show that the position of the creditor was "substantially justified" or that "special circumstances" would make the award unjust. In re Stine, 254 B.R. 244, 249 (9th Cir. BAP 2000). The standard of substantial justification is met if the creditor demonstrates a reasonable basis in law or fact to file an action. Id.

Here, Debtor failed to establish that the discharged debt is a consumer debt. The debt here is comprised of an unreturned security deposit that arose from the relationship of Debtor and Creditor as landlord and tenant. Debtor testified that Debtor's activity as a landlord was clearly second to Debtor's primary career in the computer industry. It was while conducting business as a landlord that Debtor became obligated to Creditor. Debts related to rental activity incurred by part-time landlords are not consumer debts under Section 101(8). In re Pedigo, 296 B.R. 485, 491 (Bankr. S.D. Ind. 2003).[2] In Pedigo, a retired widower incurred a loan accrued to prepare his property for use by a tenant. The Pedigo court determined that the debtor's dealings as a part-time landlord were business oriented and held that the debt was not a consumer debt. Id. Here Debtor's obligation to Creditor likewise developed from Debtor's dealings as a part-time landlord when he leased the Property to Creditor. Under Pedigo, the debt in this case is not a consumer debt.

Debtor also asserts that Creditor lacked substantial justification to bring this action. Debtor asserts Debtor's actions or omissions were not fraudulent. Debtor also argues that whether or not Creditor agreed to accept the stipulated judgment lien as consideration for settling the state court action, Creditor would have received such a judgment lien after trial and that, therefore, Creditor had no grounds to assert that Creditor suffered damage as a result of fraud as a matter of law. Debtor's argument assumes Creditor was faced with only two options --- pursue the

---

[2] The Pedigo court interpreted Bankruptcy Code §101(7), the predecessor section to Bankruptcy Code §101(8). Bankruptcy Code §101(8) continues former Bankruptcy Code §101(7) without change.

state court action and, if successful, recover a judgment lien, or agree to a stipulated judgment and accept a lien as settlement. The Court disagrees with Debtor.

First, Creditor waived any penalty damages by settling with Debtor. Had Creditor proceeded to trial rather than settle with Debtor, Creditor might have obtained a larger judgment. Second, Creditor suggested that, had he known of the foreclosure, Creditor might have sought alternative consideration for settlement and that Creditor thereby suffered damage as a result of fraud and had a reasonable basis in law to assert his claim. Debtor did not introduce evidence to rebut Creditor's testimony. Finally, the Court notes that a material fact was in dispute, e.g., whether or not Debtor informed Creditor of the pending foreclosure. It was necessary for the Court to review substantial testimony in order to make a determination on that matter.

In sum, Creditor demonstrated that Creditor had a reasonable basis in law and in fact to assert his §523(a)(2) action. Stine, 254 B.R. at 249. Accordingly, the Court finds that Creditor had substantial justification for filing this claim and Debtor's request for fees and costs is denied. Id.

CONCLUSION

For the foregoing reasons, the claim asserted by Creditor against Debtor is discharged under 11 U.S.C. §523(a). Debtor's request for attorney's fees and costs under 11 U.S.C. §523(d) is

/ / /

/ / /

/ / /

denied. Counsel for Debtor shall submit a proposed judgment after review by Creditor as to form.

Dated: April 13, 2007

/s/ Arthur S. Weissbrodt
ARTHUR S. WEISSBRODT
UNITED STATES BANKRUPTCY JUDGE

<u>Court Service List</u>

Eric G. Shedlarski
1060 Valley View
Ben Lomond, CA 95005

David Dennis Webster
1802 Eleuthera Point, Apt. F-4
Pompano Beach, FL 33066

Henry B. Niles, III, Esq.
Law Offices of Henry B. Niles III
340 Soquel Ave. #105
Santa Cruz, CA 95062

Chapter 7 Trustee
John W. Richardson
5161 Soquel Dr. #F
Soquel, CA 95073

U.S. Trustee
Office of the U.S. Trustee / SJ
U.S. Federal Bldg.
280 S 1st St. #268
San Jose, CA 95113-3004